PER CURIAM.
This is an appeal from a summary judgment which declared the interest of H. 0. Bynum, Jr., in the H. 0. Bynum, Sr. trust subject to levy by W. Loy Campbell (Campbell), a judgment creditor of H. 0. Bynum, Jr. We reverse.
On November 27,1953, H. 0. Bynum, Sr., executed a trust document conveying certain real property to his daughters, Lucy Scott Bynum and Jessie Sue Bynum, as trustees. They were to hold the property in trust for themselves and their brother, H. 0. Bynum, Jr. (Bynum). The trust agreement read, in pertinent part, as follows:
“1. For and in consideration of the love and affection which I, the undersigned, H. 0. Bynum, Sr. have for my beloved son, H. 0. Bynum, Jr., and for my beloved daughter, Lucy Scott Bynum, and for my beloved daughter, Jessie Sue Bynum, and for certain other good and valuable consideration, the receipt whereof is hereby acknowledged, I have transferred, assigned, and conveyed, and by these presents do hereby transfer, assign, set-over, grant, bargain, sell and convey unto Lucy Scott Bynum and Jessie Sue Bynum and to the survivor of them as trustees for H. 0. Bynum, Jr., Lucy Scott Bynum and Jessie Sue Bynum and to their successors in interest the following described property, to-wit: ... To have and to hold the same unto the said Lucy Scott Bynum and Jessie Sue Bynum as Trustees for said beneficiaries and to their successors in interest, but in trust, nevertheless, upon the terms and conditions and with the powers and duties hereinafter set out.
“2. For and in consideration of the love and affection which I, the undersigned H. 0. Bynum, Sr., have for my said three children and for certain other good and valuable consideration, the receipt whereof is hereby acknowledged, I have transferred, assigned and conveyed and by these presents do hereby transfer, assign, set over, grant, bargain, sell and convey unto Lucy Scott Bynum and Jessie Sue Bynum, as Trustees for H. 0. Bynum, Jr., Lucy Scott Bynum and Jessie Sue By-num, each, an undivided one-third interest in and to the property described herein above.
“3. All of the property herein conveyed which will herein for convenience be referred to as the ‘Trust Estate’, shall be kept, divided, and held by the said Trustees, and their successors in ' trust, in three equal parts, each of which shall be held and administered as a separate trust for the benefit of the respective beneficiary above named, subject, however, to the conditions, limitations, and provisions hereinafter set out. A separate account shall be kept by the said Trustees of each of said trusts and the investments of each of the said separate trusts shall at all times be kept the same, both in kind and quantity, as nearly as conveniently may be, and to that end joint investments may be made by the said trustees on behalf of the said separate trusts contributing an equal amount of the funds used in making such joint investments. And all additions to the Trust Estates held to this declaration of trust shall be divided among the said three separate trust estates in equal parts or shares except and unless the instrument making the additional conveyances to said trust estates shall otherwise provide or direct.

“7. The trustees of each of the said trusts or for each of said beneficiaries shall during the lifetime of each of said beneficiaries pay over each year to each beneficiary one-third of the net income from said trust estate or to accumulate the same for the benefit of the beneficiaries as the trustees in their sole discretion think best. That upon the death of either of said beneficiaries, being survived by a child, children or descendants of a child or children, the trustees shall thereafter pay to such child, children or descendants of a child or children per stirpes the income from said estate which such beneficiary would have received if living. Upon the death of one or more of said beneficiaries, not being survived by a child, children nor their descendants, the *1373 income from said trust estate shall thereafter be divided equally between the survivors of my said three children and when there is only one surviving, if the other two have died without a child, children, or their descendants, the Trustees shall thereafter pay the entire income of said estate to such last surviving child.
“8. These trusts shall continue during the lifetime of the last surviving of my said three children — that is to say, after the death of the last surviving of my said three children, each of these trusts shall terminate, and the Trustee at that time acting, or the personal representative of the last surviving of my said three children, if said child be at the time acting as Trustee hereunder, shall pay over to the beneficiaries of each trust the entire principal of such trust estate, together with any accumulations that may be added thereto, if any.
“9. In the event of the death of either of my said three children, the beneficiary named in any one or more of these trusts, then the beneficiaries under the Last Will and Testament of such deceased beneficiary, or in the event that such beneficiary leaves no Last Will and Testament, such persons as would be entitled to inherit the property constituting the trust estate shall be substituted for such deceased beneficiary and shall take such deceased beneficiary’s interest in and to the trust estate of such deceased beneficiary, and in case of the death of the beneficiary intestate, those who shall take hereunder shall take in proportion to which they would be entitled to inherit the same had the beneficiaries died at said time a resident of Alabama, intestate and the owner of said property.

“14. Where the grantor has herein described that funds shall be paid over to any beneficiaries, the Trustees may in their discretion use and apply such sums for the benefit of such beneficiary, or may pay over such sums to other persons for the benefit of either of said beneficiaries.
“15. In no event shall the trustees of these trusts be liable to honor any transfer or assignment which may be made by any beneficiary either as to income nor [sic] corpus of the trust.
On May 25, 1978, the Circuit Court of Jefferson County entered judgment on a jury verdict for $2,000,000 against Bynum in favor of Campbell. Campbell brought this suit and another against Bynum and other parties to recover on this judgment. The disposition of the appeal of the other collection suit by Campbell may be found in J. C. Jacobs Banking Co. v. Campbell, 406 So.2d 834 (Ala.1981).
Campbell’s complaint in this action sought both a declaration that Bynum’s interest in the trust property was subject to Campbell’s claim and an order that the property be sold and Campbell’s judgment satisfied from the proceeds. The parties filed various pleadings and conducted discovery; the cause was transferred from Jackson County to DeKalb County.
On May 10,1980, Bynum died, and Campbell moved to have Mark Scott Skelton, as administrator of Bynum’s estate, substituted as a party defendant. The court granted this motion and ruled as follows on the parties’ motions for summary judgment:
“The plaintiff’s first contention is that the power of appointment given to H. O. Bynum, Jr. by Paragraph 9 of the trust instrument, coupled with his interest for life in the trust income, creates in H. O. Bynum, Jr. a fee absolute in the trust property against which creditors can levy. At common law, one who took an estate less than a fee simple absolute in realty and who was also given an absolute power of disposition over such property was held to possess an absolute fee simple interest. See Robertson v. United States, 199 F.Supp. 78 (N.D.Ala.1961). Because the application of this common law rule frequently frustrated the intent of the grantor by defeating the interests of re-maindermen, the rule has been modified by statute in this state. . . .

*1374 “When this rule [Code 1975, § 35-4-292(a)] is applied to the interests acquired by H. 0. Bynum, Jr. under the provisions of the trust instrument, the result is that his interest thereunder is changed into a fee absolute as to the rights of creditors, for the following reasons:
“1. H. 0. Bynum, Jr. acquired by the trust instrument an absolute power of disposition in that he could devise without limitation his interest in the trust property. Moreover, upon his default in making such a devise, his interest would descend to his heirs.
“2. The absolute power of disposition is not accompanied by any trust. Although H. 0. Bynum, Jr.’s interest in the subject property was created by a trust instrument, his power of disposition is absolute with no fiduciary duty owed to anyone in its exercise.
“3. H. 0. Bynum, Jr. acquired by the trust instrument a particular estate for life, such estate being the right to the income of the trust property. Although the trustees had the authority to allow the income to accumulate, H. 0. Bynum, Jr. nevertheless possessed an interest in such income for life. “It is the judgment of this court that
as to the rights of creditors, H. 0. By-num, Jr. at the time of his death was the owner in fee simple absolute of one-third of the trust property, and that the plaintiff is entitled to levy upon such property and accumulated income therefrom in satisfaction of his judgment.”
Jessie Sue Bynum and Lucy Scott By-num, individually and as trustees of the H. 0. Bynum trust, appeal from this final judgment and from the order denying their motion for new trial. They argue, in substance, that the trial court erred in holding that Code 1975, § 35-4-292(a), applied so as to subject Bynum’s interest in the trust to Campbell's claim. They contend that-three tests must be met before § 35-4-292(a) converts a power into a fee simple as to creditors. First, the debtor must have an absolute power of disposition; second, the power must not be accompanied by any trust; third, the power must be given to the owner of a particular estate for life or years. Because we find that Bynum’s power was not absolute within the meaning of applicable law we pretermit discussion of the second and third tests.
Section 35-4-292 must be read in pari materia with § 35-4-291. These two sections read in full as follows:
“§ 35 — 4-291. Powers deemed absolute.
“Every power of disposition is deemed absolute, by means of which the donee of such power is enabled in his lifetime to dispose of the entire fee for his own benefit; and, where a general and beneficial power to devise the inheritance is given to a tenant for years or for life, it is absolute within the meaning of subsections (b) and (c) of section 35-4-292. “§ 35-4-292. Effect of grant of absolute power.
“(a) When an absolute power of disposition, not accompanied by any trust, is given to the owner of a particular estate for life or years, such estate is changed into a fee absolute, as to the rights of creditors and purchasers, but subject to any future estates limited thereon, in case the power is not executed or the lands sold for the satisfaction of debts during the continuance of such particular estate.
“(b) When a like power of disposition is given to any person to whom no particular estate is limited, such person also takes a fee, subject to any future estate which may be limited thereon; but absolute in respect to creditors and purchasers.
“(c) In all cases where such absolute power of disposition is given, not accompanied by any trust, and no remainder is limited on the estate of the donee of the power, he has an absolute fee.
(Emphasis added.)
Inspection of these sections shows that a testamentary power is not absolute with respect to § 35 — 4-292(a). The Alabama legislature copied these statutes, which first appeared in the Code of 1852, *1375 from statutes passed in New York in 1828. See, Note, Powers of Appointment in Alabama—A Plea for Reform, 26 Ala.L.Rev. 355 (1974). In the New York statutes, the provision found in our Code as the second clause of § 35-4-291 referred to all three of the subsections of § 35 — 4—292. This Court has called the Alabama legislature’s deletion of subsection (a) from the purview of the second clause of § 291 “an act of considerable significance.” Nabors v. Woolsey, 174 Ala. 289, 293, 56 So. 533 (1911).
Thus, because Bynum’s power of disposition of his interest in the trust could be exercised by devise only, the trial court erred in holding that Bynum owned a fee simple absolute as to creditors due to the operation of § 35-4-292(a).
 Nor do we find that subsection (b) or (c) governs this situation. The words in subsection (b), “to whom no particular estate is limited,” do not apply because By-num’s interest was limited to a one-third interest in the income for life, whether distributed or accumulated, together with a power to devise his share of the corpus and any accumulated income. Even this power of disposition is limited by the provision that the trust was not to terminate until the death of H. 0. Bynum, Sr.’s last surviving child, so Bynum’s appointee could not take possession until that event. Subsection (c) does not apply because a remainder is limited to Bynum’s heirs should he fail to exercise his power of disposition. Such a remainder is valid in Alabama under Code 1975, § 35-4-230.
In adopting the New York statutory scheme, the Alabama legislature did not include the provision which abolished powers as they existed at common law. See Code 1975, §§ 35-4-290 through -306; Code 1852, §§ 1324-1342; N.Y.Rev.Stat. ch. 46, § 110 (1896); Cutting v. Cutting, 86 N.Y. 522 (1881); Note, supra, 26 Ala.L.Rev. at 359; Note, Powers of Appointment — The New York Revision, 65 Colum.L.Rev. 1289 (1965). To some extent the statute repeals the common law by necessary implication, and we do not find that this situation falls into a category where the common law would allow levy even though the statute does not.
The common law in Alabama was that an executory interest could not follow an absolute power of disposition because of repug-nancy between the two. Allen v. White, 16 Ala. 181 (1849); Flinn v. Davis, 18 Ala. 132 (1850). The donee of the power took a fee simple absolute. The common law in many states as to a life estate with a power of disposition was that a creditor could attach the assets only if the power was actually exercised, and only to the extent the do-nee’s other assets were insufficient to satisfy the debt. See, Note, Creditors’Ability to Reach Assets Under a General Power of Appointment, 24 Vand.L.Rev. 367, 371 (1971).
The statutes we are dealing with, however, were passed to protect the interests of remaindermen in default of exercise of a power. Alford’s Adm’r v. Alford’s Adm’r, 56 Ala. 350, 353 (1876). We do not think the common law protection of creditors and purchasers applies in this case because this power is not absolute under common law terms. It could not be exercised inter vivos. See Flinn v. Davis, supra; Alford’s Adm’r v. Alford’s Adm’r, supra. Furthermore, Bynum could not even transfer the property free of the trust at his death unless he survived his two sisters, which he did not.
Commentators have criticized the system of powers created by these statutes. See the law review notes cited above and Whiteside and Edelstein, Life Estates With Power to Consume: Rights of Creditors, Purchasers and Remaindermen: A Study of New York Real Property Law Sections 149— 153,16 Cornell L.Q. 447 (1931). We do find needless complexity and ambiguity in these statutes. Indeed, New York has repealed its own pioneering statutes and substituted a new system of powers — which, incidentally, does not subject testamentary powers to levy by creditors. N.Y.Est., Powers & Trusts Law §§ 10-10.1 to 10-10.8 (McKinney 1967).
*1376 Other modern statutes might subject By-num’s power of appointment to Campbell’s claim. Cal.Civil Code §§ 1380.1 — 92.1 (West Supp.1982); Mich.Comp.Laws Ann. §§ 556.111 — .133 (1982 Supp.); Minn.Stat. Ann. § 502.70 (West 1980); Wis.Stat.Ann. § 702.01 — .21 (West 1977). Such a change in the law of Alabama must be left to the legislature.
Because Bynum was not granted an “absolute power of disposition” within the meaning of our statutes, Campbell cannot levy on Bynum’s interest in the trust estate.
The judgment of the trial court is therefore reversed and a judgment is hereby rendered in favor of appellants.
REVERSED AND RENDERED.
TORBERT, C. J., and FAULKNER, AL-MON, EMBRY and ADAMS, JJ., concur.