(81 South. 80)

JEMISON v. BRASHER et al. (6 Div. 848.)

(Supreme Court of Alabama. Feb. 6, 1919.)

1. EXECUTORS AND ADMINISTRATORS ☞473, 474(1)—JURISDICTION OF COURT—REMOVAL TO COURT OF EQUITY.

Under the rule existing before enactment of Gen. Acts 1915, p. 738, a personal representative could have administration removed from probate court to a court of equity only where there were equitable grounds therefor, as necessity for construction of will, or the protection of personal representative in the execution of the trust.

2. EXECUTORS AND ADMINISTRATORS ☞473, 474(2)—JURISDICTION OF COURT—REMOVAL TO COURT OF EQUITY—RIGHT OF HEIRS.

A legatee, heir at law, or next of kin of intestate, has an unqualified right to have the administration of the estate removed from the probate court to a court of equity.

3. EXECUTORS AND ADMINISTRATORS ☞473, 474(1) — REMOVAL OF ADMINISTRATION TO COURT OF EQUITY—JURISDICTION OF EQUITY.

The court of equity taking jurisdiction of administration of an estate upon removal from probate court will administer the estate and apply the substantive law regulating the conduct and settlement of administration in the probate court.

4. WILLS ☞440—CONSTRUCTION—INTENTION.

In construing will, the intention of testator expressed in will must prevail if consistent with the rules of law.

5. WILLS ☞443 — CONSTRUCTION — GENERAL AND PARTICULAR INTENTION.

The general scheme or primary intention of testator manifest in the will itself, forming a consistent whole, must be given expression or effect over the special and secondary intent to the contrary finding expression therein.

6. WILLS ☞470—CONSTRUCTION—CONSTRUCTION AS A WHOLE.

Testator's intention must be gathered from the whole instrument, and on all its parts, and from the general scheme and plan manifest by the will itself.

7. WILLS ☞441 — CONSTRUCTION — CIRCUMSTANCES OF MAKING WILL.

Testator's intention must be gathered not only from the will as a whole, but from facts calculated to have influenced testator at time of execution of will and the circumstances in which it was to operate.

8. WILLS ☞472—CONSTRUCTION—CONFLICTING PROVISIONS.

An estate given in clear and decisive terms cannot be diminished by a doubtful subsequent clause, nor by inferences therefrom, nor by any subsequent words that are not as clear and decisive as the words in the clause giving such interest or estate.

9. WILLS ☞616(2)—LIFE ESTATE—POWER OF SALE—CONSTRUCTION OF STATUTE.

Code 1907, § 3423, providing that when an absolute power of disposition, not accompanied by any trust, is given for life or years, such estate is changed into a fee absolute, as to rights of creditors or purchasers, but subject to any future estates if the power is not executed, or the lands sold for debts, during the continuance of the estate, construed, in view of section 3425, to protect only remainders expressly limited on particular estates, and not mere reversions and remainders by implication.

10. WILLS 616(2)—CONSTRUCTION—LIFE ESTATE—POWER OF SALE.

In view of Code 1907, §§ 3423, 3425, will giving wife property "to have and to hold during the term of her natural life and at her death to be equally divided among my children" gave a life estate, which was not enlarged by subsequent clause authorizing wife to sell property upon the youngest child becoming of age "for reinvestment or for the purpose of division of the proceeds;" such power being a mere power of distribution or power to change investment and the remainder not being one by implication.

Appeal from Circuit Court, Tuscaloosa County; Henry B. Foster, Judge.

Bill by Mary T. Jemison, as executrix of the will of M. P. Jemison, against Lela J. Brasher and others, to remove an estate from the probate to the chancery for partial settlement, and to construe the will. From the decree rendered, the complainant appealed. Affirmed.

The bill sought to determine by its construction of the will: (1) Whether or if complainant, as such executrix, should desire before the said Virginia J. Cobb reaches the age of 21 years to sell and convey any of the land belonging to said estate for reinvestment or division among the children of said testator she may lawfully sell the same; and (2) whether, under the fourth clause of the will, complainant may lawfully sell any property of said estate and use the proceeds thereof for her own individual support, or otherwise for her individual use as may be necessary or as she may desire.

So far as necessary to be here set out the will is as follows:

Second: I give, devise and bequeath unto my beloved wife, Mary Torrey Jemison, all of the property of every kind and character of which I

may die seized and possessed, to have and to hold during the term of her natural life and at her death to be equally divided among my children.

Third: I nominate and appoint my beloved wife, Mary Torrey Jemison, as executor of this will and it is my desire and I direct that she shall not be required to give any bond or make any report to any of the courts of this state as to any of her actions as such executor.

Fourth: After my youngest child shall become of lawful age of twenty-one years, my wife as such executor shall have the power to sell and convey any lands that may belong to my estate either for reinvestment or for the purpose of division of the proceeds among those entitled to the same, and my said executor shall have the right at any time to sell any personal property that may belong to my estate and use the proceeds thereof as she may desire.

Foster, Verner & Rice, of Tuscaloosa, for appellant.

Forney Johnston and W. R. Cocke, both of Birmingham, for appellees.

THOMAS, J. The suit filed, in equity, by Mary T. Jemison, as executrix under the will of Mims P. Jemison, deceased, sought construction of said will, removal of the administration from the court of probate, and partial settlement of her accounts as executrix.

After demurrer to the bill was overruled and answer filed, the cause was submitted on the pleadings and agreed statement of facts. The court decreed, among other things: (1) That Mary T. Jemison has a life estate in the real and personal property of the estate of Mims P. Jemison, deceased, with the right to use the rents, income, and interest derived therefrom for her own benefit, as she may desire, and upon the falling in of the life estate all of said property, real and personal, shall be equally divided among testator's four children; (2) that "Mary T. Jemison, as executrix aforesaid, may lawfully sell any of the personal property belonging to said estate at any time; that the said Mary T. Jemison may use the interest and income from said personal property during the period of her natural life, but that she may not use, employ or expend for her own individual use or in any other capacity than as executrix under the said will, any part of the corpus of the personal property of the estate of Mims P. Jemison, deceased"; and said executrix was directed to "administer said estate in accordance with this decree." The reporter will set out the will.

The agreed statement of facts informs us that at the time of his death and on the date of the execution of his will, testator possessed a large estate, consisting of real and personal property, and that a substantial income was realized from the invested securities; that he had four children, two of whom were by his first wife, and two by his second wife, Mary T. Jemison.

[1-3] Under the old rule, we may observe of the right of a personal representative to removal of administration of the estate from the probate court to a court of equity, that it exists only when there are equitable grounds therefor, as necessity for construction, or a bona fide doubt as to the true meaning of the will, or to protect the personal representative in the establishment, administration, or execution of the trust; and the right of removal, at the instance of a legatee or devisee of testator, heir at law, or next of kin of intestate, is unqualified. Trotter v. Blocker, 6 Port. 269, 290; Lake View Co. v. Hannon, 93 Ala. 87, 89, 9 South. 539; Hurt v. Hurt, 157 Ala. 126, 130, 47 South. 260; Ashurst v. Ashurst, 175 Ala. 667, 672, 57 South. 442; Ralls v. Johnson, 75 South. 926, 930;[1] Pearce v. Pearce, 74 South. 952, 959;[2] Kaplan v. Coleman, 180 Ala. 267, 60 South. 885; Carroll v. Richardson, 87 Ala. 605, 610, 6 South. 342. This, however, is changed by statute (Gen. Acts 1915, p. 738), and the right of removal is not challenged. Taking jurisdiction, a court of equity will administer the estate and apply the substantive law regulating the conduct and settlement of administration in the probate court. Taliaferro v. Brown, 11 Ala. 702; Hall v. Heirs of Wilson, 14 Ala. 295; Cowles v. Pollard, 51 Ala. 445; Tygh v. Dolan, 95 Ala. 269, 10 South. 837; Hurt v. Hurt, supra.

[4-7] The cardinal rules of testamentary construction have been given frequent application by our court. Gunter v. Townsend, 79 South. 644, 648, 649;[3] Ralls v. Johnson, supra; Pearce v. Pearce, supra; Myrick v. Williamson, 190 Ala. 485, 67 South. 273; Montgomery v. Wilson, 189 Ala. 209, 66 South. 503; Duncan v. De Yampert, 182 Ala. 528, 62 South. 673; Wolffe v. Loeb, 98 Ala. 426, 13 South. 744; Wynne v. Walthall, 37 Ala. 37. Of these, the great rule is that the intention of a testator expressed in his will shall prevail, if consistent with the rules of law, defined in the old books as "the legal declarations of a man's intentions, which he wills to be performed after his death." 2 Black. Comm. 499. To this intention "all rules must bend." Smith v. Bell, 6 Pet. 68, 8 L. Ed. 322. The general scheme, or primary intent of the testator manifest in the will itself, forming a consistent whole, must be given expression or effect over the special and secondary intent to the contrary finding expression therein. Ralls v. Johnson, supra; Gurley v. Bushnell, 76 South. 324;[4] Gunter v. Townsend, 79 South. 644, 648.[3] This intention of the testator must be gathered from the whole instrument and all of its parts, from the testator's general scheme and plan manifested by the will itself, and from the facts that existed which were calculated to influence the testator at the time of his execution of the will, and the circumstances in which it was to operate. Mims v. Davis, 197 Ala. 88, 72 South. 344.

[8] It is a further established rule of such construction that when an estate or interest is given in one clause of a will in clear and

decisive terms, the interest so given cannot be disminished "by raising a doubt upon the extent and meaning of a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving the interest or estate." Duncan v. De Yampert, 182 Ala. 528, 62 South. 673; Pitts v. Campbell, 173 Ala. 604, 55 South. 500; Bruce v. Bissell, 119 Ind. 525, 22 N. E. 4, 12 Am. St. Rep. 436; 1 Underhill on Wills, § 358; 30 Am. & Eng. Ency. Law, 688; 1 Schouler on Wills, §§ 466, 468–474; Ralls v. Johnson, supra. Lord Campbell's statement of this maxim is:

"If there be a clear gift, it is not to be cut down by anything subsequent which does not with reasonable certainty indicate the intention of the testator to cut it down; but the maxim cannot mean that you are to institute a comparison between the two clauses as to lucidity." Randfield v. Randfield, 8 House of Lords Cas. 224, 235.

In ascertaining the intent of a testator as to the quantum of estate devised or bequeathed, it is important to keep in mind the distinction between "property" and "power." Such a distinction has been a fruitful source of discussion by the courts. Bradly v. Westcott, 13 Ves. Jr. 448; Denson v. Mitchell, 26 Ala. 360; Smith v. Bell, supra; McRee v. Means, 34 Ala. 349; Mason v. Pate's Ex'r, 34 Ala. 379; Banks v. Jones, 50 Ala. 480; Weathers v. Patterson, 30 Ala. 404; Gunter v. Townsend, supra; Mims v. Davis, 197 Ala. 88, 92, 72 South. 344. See Chewning v. Mason, 158 N. C. 578, 74 S. E. 357, 39 L. R. A. (N. S.) 805, and general authorities on testamentary power to create a remainder after life estate with absolute power of disposal, collected in 39 L. R. A. (N. S.) 805; Steiff et al. v. Seibert et al., 128 Iowa, 746, 105 N. W. 328, 6 L. R. A. (N. S.) 1186.

Of the difference between property and the exercise of executorial power, Mr. Justice Dupue has said:

"Counsel of the administrator contended that the superadded power either gave her an absolute estate in all the testator's personalty, or authorized her to make sale and conversion of the corpus of his personal estate at her own will and pleasure, and to take the proceeds thereof for her own benefit. His argument was rested upon the fact that the power to sell was given to her 'in case she should find it necessary or see fit to dispose of the same,' and the use of the words 'remaining at the decease of my wife,' in the power conferred upon his executors to sell after the death of his widow. In Downey v. Borden, 7 Vr. [36 N. J. Law] 460, it was held by this court, on a devise of lands expressly for life, that superadded words granting a power to sell in fee would not enlarge the life estate to a fee. The same rule of construction is applicable to bequests of personal estate. Dutch Church v. Smock, Sax. [1 N. J. Eq.] 148; Annin v. Vandoren, 1 McCart. [14 N. J. Eq.] 135.

These cases were enunciations of common-law principles, which, in the absence of evidence to the contrary, must be assumed to be the law of California. The meaning of the testator in his will is apparent. For so much of his estate as he gives 'for the sole use and benefit of his wife to be under her control and used by her as she may see fit to use the same,' he expressly limits the time of her use and enjoyment, 'during the period of her natural life'; and he provides for the residue not only by the specific bequests, but also by a residuary disposition of the balance of his estate. There are no words in the will which authorize her to sell and dispose of the testator's property for her own use. On the contrary, the power of sale over his estate, real and personal, expressed in the will, is given to her as executrix, which implies a fiduciary disposition of the proceeds realized from the sales, inherent in the office, in virtue of which she was to exercise the power." Pratt v. Douglas, 38 N. J. Eq. 516, 533, 534.

We are not without decisions in this jurisdiction making the same distinction.

A will had conferred on Mrs. Crawford, executrix, "the privileges and rights of buying, selling and conveying any property" the testator then owned, of which Chief Justice Stone observed that it was "a very full power of disposition." It was contended that the power enlarged Mrs. Crawford's estate "into an absolute fee." Answering this, the Chief Justice said:

"We cannot agree to this, for two reasons: *First*, the will does not give Mrs. Crawford the individual, exclusive use and enjoyment. Its language is, 'that my whole estate be kept together and enjoyed by my beloved wife, Sarah B. Crawford, and my children,' naming them—five in number. There is, in the devise no discrimination between the wife and the children, in the *quantum* of interest given. *Second*, the power of disposition is conferred on the wife, *not as an individual, but in her executorial capacity*. This cannot enlarge her individual interest." (Italics supplied.) Dryer v. Crawford, 90 Ala. 131, 133, 7 South. 445, 446.

The will construed in Myrick v. Williamson, 190 Ala. 485, 67 South. 273, authorized testator's wife "to take full control of" all of his properties "in her own name, to sell or buy property with full power to make title just as I [testator] would if living"; exempted her from giving bond or making return or settlement to any court; provided for the education of his grandson and authorized his wife "to pay for same out of my [testator's] estate"; and provided that, at the death of his wife, his grandson and granddaughter should each have the specific sums indicated, directing that the remainder of his estate should be divided into four equal parts, one part to be given to a daughter, another to a granddaughter, a third to a grandson, "and the other and last part to be equally divided between the seven other grandchildren, the children of my [testator's] daughter, Mary L. Myrick." After the pro-

bate of the will Mrs. Buffington (testator's wife) by two deeds conveyed certain of testator's property, and after her death a bill was filed for cancellation of said deeds, or limitation thereof by decree, that same be declared a conveyance only of a life estate to her said grantee. It was insisted that the will gave the widow an absolute fee in the entire estate, or a life estate unaccompanied by any trust, with absolute power of disposition, the effect of which was to give her a fee-simple title. Held that the authority conferred by the will over testator's properties was executorial merely, or that of a trustee, and did not give a beneficial interest in the estate. Wolffe v. Loeb, 98 Ala. 426, 13 South. 744.

A will construed by our court gave testator's wife his "entire estate, real, personal and mixed, to be hers during her natural life, with full power and authority in her to keep it, consume it, sell or dispose of it in any way she may desire," with remainder over. Held, that where the life tenant had absolute power of disposition with such remainder, sold the property when insane, and thereafter died, a chancery court could give the remaindermen relief against such conveyance. Head v. Lane, 186 Ala. 335, 65 South. 343.

It has been noted by this court that there was some apparent confusion in the cases before the enactment of the statute. Code 1852, § 1325; Revised Code 1867, § 1595; Code 1907, § 3423. In Alford's Adm'r v. Alford's Adm'r, 56 Ala. 350, the statute was construed to mean that a particular estate (though accompanied with an absolute power of disposition) should, as to any future or ultimate estate limited thereon, be held to be only a particular estate; but that, as to creditors and purchasers from the life tenant, such particular estate should be regarded as and held to be a fee-simple estate.

In Rutledge v. Crampton, 150 Ala. 275, '43 South. 822, the statute was again construed, Bolman v. Lohman, 79 Ala. 63, explained, and the rule of Alford v. Alford, supra, affirmed. Again, in Head v. Lane, supra, the statute was considered, the justice saying that it was plain and free of ambiguity and correctly interpreted in the Alford Case. A like conclusion was announced in Smith v. Cain, 187 Ala. 174, 65 South. 367.

Justice Anderson construed the will of Mr. Hawkins as to a devise of the Lon Martin place to his daughter, Mrs. Sarah Nabors, "to be held by her for her own use" and behoof "during her life" and authorizing her "to sell or dispose of same for reinvestment; the proceeds to be held and treated the same as the original property" bequeathed, and to "dispose of said legacy by will or devise, if she chose to do so; otherwise it shall descend to her children or heirs." Held, that Mrs. Nabors did not get a fee un-

der the terms of section 3423 of the Code as the power to sell was accompanied with a trust, and the right to devise given was only a special power of disposition or appointment and did not have the effect of enlarging a life estate. The justice further says:

"Nor was the life estate enlarged by sections 3424, 3425 of the Code. Her estate was limited, and did not therefore fall within the influence of section 3424. On the other hand, an express remainder was limited upon her life estate, so as to keep it beyond the influence of section 3425. It is true that section 3426, among other things, makes a general and beneficial power to devise an absolute power, within the meaning of the last two sections, to wit, sections 3424 and 3425, but, as above demonstrated, the will in question does not come within the influence of said last two sections, and, as it comes within the purview of section 3423, and the power to sell being accompanied with a trust, the right to devise is not enlarged to an absolute power under section 3426." Nabors v. Woolsey, 174 Ala. 289, 292, 293, 56 South. 533, 534, 535.

In Gunter v. Townsend, supra, the Nabors Case is quoted and the authorities collected in support of the proposition that the express bequest of an estate for life negatives the intent to give the fee, converting the superadded right of disposition into a mere power under the wills in question.

In Smith v. Cain, supra, the bill was to enforce complainant's claim for certain money and securities, the proceeds of a sale of testator's properties, and to enjoin respondents from disposing of same. In Mr. Cain's will all of his real and personal properties were given to his wife, Nancy Jane, for her to have and control the same as testator might, and "said Nancy Jane Cain, my wife, to have and to hold all that I may be possessed of at my death, to sell and convey any property she may choose for her support or comfort, and she may see proper, during her natural life, and at her death, what may be left * * * *" of said estate was directed "to be divided according to law in such cases made and provided." Under the authority of Alford v. Alford, supra, and Rutledge v. Crampton, supra, as analogous holdings, Mr. Justice Somerville was of opinion that under the terms of Mr. Cain's will "the heirs at law of the testator are entitled to all or any part of the estate remaining unconsumed and undisposed of at the death of Nancy Cain"; and the difference between the Cain and Alford wills was pointed out to show that express remainders were created. By the provision of Mr. Alford's will, construed by Chief Justice Stone, testator's entire property and estate, consisting of real and personal property, were given to his wife "to be used by her in such manner as she may choose"; and she was authorized "to sell and dispose of all the property, and to invest the proceeds according to her own judgment, and to use and enjoy the said

property, or the proceeds thereof, during her life, without restriction, and without being accountable for the same." The testator then provided as follows:

"I give and bequeath one-half of the property, or the proceeds thereof, which my wife may hold at the time of her death, and which she obtains under the provisions of this will, to my next of kin, and the other half in such manner as she may direct by will; and in case of no such will, to her next of kin."

Appellant's counsel say that "no question of the right of purchasers or creditors is here involved, and, in the absence of such question, a life estate with an added absolute power of disposition is equivalent to a gift for life with the power and right to consume the corpus, coupled with a gift over of what remains unconsumed or undisposed of in the manner authorized at the death of the first taker"; and cite in support thereof Alford v. Alford, supra; Weathers v. Patterson, supra; Head v. Lane, supra; Mims v. Davis, supra. With the exception of the Mims Case, we have adverted to these authorities. The contest was between the remaindermen and a purchaser from Mrs. Mims; and her power to sell was upheld. In considering the construction given the will of Mr. Mims, it must not be overlooked that it contained no appointment of the wife as executrix, as in the instant will. Of necessity, whatever power was given therein to the wife was in an individual, and not in a representative, capacity. This was a very material fact. The court construed the will to the effect that by the first clause Mrs. Mims took a fee which a subsequent clause cut down to an estate for life with remainder to the daughters, one of whom was a deaf mute, and that the remainder limited over was not necessarily intended to be of the entire estate or wholly independent of intervening disposition by the life tenant; and that the testator was only seeking to deal with the part of his property passing under his will which should remain undisposed of by the widow at her death. The opinion states that following as a natural implication from the language used in the will, and "the circumstances in which it was to operate," it was the testator's intent that his wife should have a power of disposition and consumption of the corpus of the estate "in any manner by her deemed best for her support." Cain v. Cain, 127 Ala. 440, 29 South. 846.

Several of our later cases (Gunter v. Townsend, supra; Mims v. Davis, supra) cite the case of Denson v. Mitchell, 26 Ala. 360. It was there announced that an express bequest of an estate for life negatives the intention to give the absolute property and converts a superadded right of disposition into a mere power. Gunter v. Townsend, supra. The property disposed of by testator Denson consisted of personal properties, bequeathed to his wife by the eighth paragraph of his will, all of which she was "to have and hold during her natural life, and at her death to dispose of at her own will and pleasure." No express provision being made for the remainder, in default of appointment by the life tenant the same would vest in the personal representative to be administered as in case of intestacy. The question there for decision was one of testamentary intention as to a remainder in the property (in dispute) which had been sold by the life tenant. To the same effect was Weathers v. Patterson, 30 Ala. 404.

In the recent case of Edwards v. Williamson, 80 South. 867,[5] the will of Mr. Neville gave his wife a life estate, with power of disposition, but with remainder over to the children of testator's brother, in all personal property not consumed by the life tenant, and in all lands unsold, or the proceeds of lands sold under the power and remaining in the hands of the wife at the time of her death. The question for decision was whether this remainder included accumulations or savings of the life tenant, though derived from the use or income of testator's property. The holding was that the remainder was express, and that the wife's "life estate entitled her to the entire use and income from the property; and funds that she may have had at the time of her death, though resulting from the use, management and control of the husband's estate, belonged to her absolutely." * * * That is to say, the remainder, under the terms of Mr. Neville's will, was not expressly declared to "extend beyond the corpus of the estate left by the husband as distinguished from any increase of same due to the accumulation by the life tenant through the income therefrom." There is nothing in this construction of the Neville will militating against the views announced in the instant case.

[9] From section 3425, reading, "In all cases where such absolute power of disposition is given, not accompanied by any trust, and no remainder is limited on the estate of the donee of the power, he has an absolute fee," when considered with section 3423, it would appear that the future estates protected by the latter section of the Code were remainders expressly limited upon particular estates; leaving the class of future estates of mere reversions and remainders by implication, subject to the common-law doctrine. Young v. Sheldon, 139 Ala. 444, 448, 36 South. 27, 101 Am. St. Rep. 44; Smith v. Phillips, 131 Ala. 629, 632, 30 South. 872; Wells v. Am. Mortg. Co., 109 Ala. 430, 20 South. 136. In fact, Justice McClellan observed that the statute was confirmatory of the appropriate common-law rule. Hood v. Bramlett, 105 Ala. 660, 17 South. 105; Adams v. Mason, 85 Ala. 452, 455, 5 South. 219; Rutledge v. Crampton, 150 Ala. 275,

[5] Ante, p. 483.

282, 43 South. 822; Nabors v. Woolsey, supra (174 Ala. 289, 294, 56 South. 533).

[10] In the instant case, the ulterior estate vested in testator's four children was not left to implication, but was expressly limited on the wife's life estate by item 2 of Mr. Jemison's will, as follows:

"I give, devise and bequeath unto my beloved wife, Mary Torrey Jemison, all of the property of every kind and character of which I may die seized and possessed, to have and to hold during the term of her natural life and at her death to be equally divided among my children."

Such express creation of an estate for life negatives the intent to give the fee, and when considered with the superadded right of disposition in item 4, the intent of testator is that a mere power of distribution, or power to change the investment without destruction of the trust created in remainder, only was given. Any other construction would be to say that the intent of testator was to give his wife and her two children his large estate of personal property and to put it in the power of Mrs. Jemison to deprive the two children of Mr. Jemison's first wife of any of that part of their father's estate, consisting of a large amount of personal property, by a change of the investment. A change of investment was not permitted to defeat the remaindermen in Bynum v. Swoope, 75 South. 170.[6] There the proceeds of the testator's insurance policy were invested in lands, and the deed taken in the wife's name, reciting that the purchase price was paid with her separate estate or funds. Equity looked to the changed form of the investment, and preserved the trust fund by treating the lands so purchased as the testator's personal estate not disposed of by the widow under the power of disposition or appointment contained in the will. It may be well to remark of Mr. Swoope's will that all of his estate of every description was given his wife for life, to be used and enjoyed at her discretion, with full power to sell and dispose of the same, without liability to account to any one; and thereafter a gift over was made of all of testator's estate not disposed of by his wife at her death, to testator's bodily heirs. The fact that by the terms of Mrs. Swoope's will this real estate was devised as a part of her separate estate and as having been purchased with her own funds was not permitted to defeat the ultimate estate. On the authority of Smith v. Cain, 187 Ala. 174, 65 South. 367, the holding was that—

"The investment of the money of the estate in this property, being a mere commutation as to form, for the use and benefit of the life tenant, did not destroy its equitable character as part of the corpus of the estate; and that, upon the death of Mrs. Swoope, the property passed by the residuary devise to the testator's bodily heirs." Bynum v. Swoope, supra.

The special intent of the testator to provide for a distribution of his estate, or rather of the proceeds thereof, among his four children at such time as his executrix thought expedient after his youngest child became 21 years of age, and to change the form of the investment of personal properties when deemed by his executrix necessary or expedient, and still preserve the corpus for his four children, is in consonance with testator's general scheme or plan finding expression in the whole instrument, to provide a life estate for his wife in all of his properties, with express remainder therein to his four children, share and share alike. The insistence of appellant that by the provision in question it was testator's intent to create a vested interest in his wife, to his large estate of personal properties, would defeat testator's general scheme or plan to equally care for his four children after having made ample provision for his wife during life, and would ignore the cardinal rule of testamentary construction that the estate or interest given in clear and decisive terms in item 2 of the will shall not be diminished by raising a doubt upon the extent or meaning, or by inference therefrom, of the provision in item 4, for changing the investment of the personal properties. Ralls v. Johnson, supra.

The decree of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.